NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELESTE ROTHMILLER, | |
| Plaintiff, | CIVIL NO. 06-386(NLH) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

**APPEARANCES:**

Robert Anthony Petruzzelli, Esquire
Jacobs, Schwalbe & Petruzzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue
Suite 340
Cherry Hill, NJ 08003

    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Gina N. Shin, Esquire
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

    Attorney for Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration, denying the application of

Plaintiff for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled any time from when she applied for benefits on February 1, 2002 until the date of the ALJ's decision on December 3, 2004.  For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Over the course of her adult life, Plaintiff, Celeste Rothmiller, had been employed sporadically, with her last gainful employment being at a food assembly plant in 2001.  On February 1, 2002, Plaintiff applied for Social Security benefits, claiming that she was disabled due to lumbar degenerative disease and depression.  After a hearing before an ALJ, it was determined that Plaintiff was not disabled, and that during the relevant time period she was capable of performing light work.  Plaintiff appealed the decision, and the Appeals Council denied Plaintiff's request for review, as well as Plaintiff's request to reopen the file.  Plaintiff now seeks this Court's review.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial

2

review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his

3

reasons for rejecting or discrediting competent evidence." Ogden
v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster
v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has
held that an "ALJ must review all pertinent medical evidence and
explain his conciliations and rejections." Burnett v. Comm'r of
Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly,
an ALJ must also consider and weigh all of the non-medical
evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d
871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d
Cir. 1981).

    The Third Circuit has held that access to the Commissioner's
reasoning is indeed essential to a meaningful court review:

>           Unless the [Commissioner] has analyzed all
>           evidence and has sufficiently explained the
>           weight he has given to obviously probative
>           exhibits, to say that his decision is
>           supported by substantial evidence approaches
>           an abdication of the court's duty to
>           scrutinize the record as a whole to determine
>           whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an
ALJ, as the fact finder, must consider and evaluate the medical
evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no
requirement that the ALJ discuss in its opinion every tidbit of
evidence included in the record," Hur v. Barnhart, 94 Fed. Appx.
130, 133 (3d Cir. 2004).  In terms of judicial review, a district
court is not "empowered to weigh the evidence or substitute its
conclusions for those of the fact-finder." Williams, 970 F.2d at

4

1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining

5

disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is

6

available for the plaintiff: "Once a claimant has proved that he
is unable to perform his former job, the burden shifts to the
Commissioner to prove that there is some other kind of
substantial gainful employment he is able to perform." Kangas v.
Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker,
703 F.2d 751, 753 (3d Cir. 1983).

####    C.   Analysis

The ALJ determined that Plaintiff was not disabled during
the relevant time period of February 1, 2001 and the date of his
decision on December 13, 2004.  The ALJ found that Plaintiff had
not engaged in any substantial gainful employment since the
alleged onset of her disability (Step One) and that lumbar
degenerative disease and depression are "severe" impairments
(Step Two).  Continuing with the sequential step analysis,
however, the ALJ found that Plaintiff's impairments did not meet
the Listed Impairments (Step Three), and that even though
Plaintiff was not able to perform her past relevant work (Step
Four), she had the residual functional capacity to perform
substantially all of the full range of light work (Step Five).

Plaintiff's appeal presents two main issues for review: (1)
whether there was substantial evidence to support the
Commissioner's finding that Plaintiff was not disabled and was
capable of performing light work, and (2) whether the Court
should remand the case due to the existence of new and material

evidence.

1.   **Whether there was substantial evidence to support the Commissioner's finding that Plaintiff was not disabled and was capable of performing light work**

Plaintiff makes three arguments to support her contention that the Commissioner's findings were not supported by substantial evidence.  First, Plaintiff argues that the ALJ did not properly determine Plaintiff's residual functional capacity at Step Five of the sequential analysis.  Second, also with regard to determining Plaintiff's residual functional capacity, Plaintiff argues that the ALJ improperly relied on the Medical Vocational Guidelines.  Third, Plaintiff argues that the ALJ did not properly consider Plaintiff's own testimony of her pain and limitations.

A.   *Whether the ALJ properly determined Plaintiff's residual functional capacity at Step Five of the sequential analysis*

With regard to the ALJ's determination of Plaintiff's residual functional capacity, Plaintiff argues that the ALJ did not perform the "function-by-function" analysis required by 20 C.F.R. § 416.945(b)(c)(d).  Specifically, Plaintiff contends that the ALJ was required to explicitly compare every one of Plaintiff's physical and mental abilities with all of the elements that constitute "light work."

Even though Plaintiff is correct that the ALJ must consider Plaintiff's physical and mental abilities in determining whether

8

she has any residual functional capacity to do any other work,
Plaintiff's interpretation of the regulation is too narrow.  The
regulation does not mandate that the ALJ provide a written
evaluation of every piece of testimony or evidence in the record,
but rather the regulation provides that the ALJ must "assess [a
claimant's] residual functional capacity based on all the
relevant evidence in [the claimant's] case record."  <u>Id.</u> at
416.945(1),(3); <u>see also</u> <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42
(3d Cir. 2001); <u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir.
2004).  Thus, in order for the ALJ's decision to stand, it must
only be determined whether the ALJ considered the relevant
evidence as a whole in determining Plaintiff's residual
functional capacity.

     With regard to her physical abilities, the ALJ noted that
Plaintiff "has only had conservative treatment for back pain,"
and that "[n]o treating physician has stated that she is totally
and permanently disabled, or has any limitations that would
prevent her from working."  (R. at 28.)  Indeed, an orthopedic
surgeon who performed a consultative examination on Plaintiff in
November 2002 reported that the clinical findings did not suggest
that Plaintiff was totally disabled and, to the contrary, the
finding suggested that Plaintiff had the capability to perform
light work.  (R. at 157.)  Additionally, the orthopedic surgeon
suggested that a breast reduction would help to alleviate

Plaintiff's low back pain, but there is no evidence in the record that Plaintiff had any surgery.  (R. at 28, 157.)

Further supporting the ALJ's finding that Plaintiff received minimal treatment for her back pain is Plaintiff's chiropractor's report.  In May 2003, Plaintiff's chiropractor stated that he had not seen Plaintiff in four months, and that she had been referred to physical therapy, but she had not gone for therapy.  Even though a chiropractor is not considered an "acceptable medical source," his report demonstrates that, in the least, for the first few months of 2003, Plaintiff had not been receiving any treatment at all for her back pain.

Plaintiff next argues that the ALJ failed to cite in his decision "multiple exhibits," which she claims would impact the ALJ's determination that she was capable of light work.  The first exhibit relates to Plaintiff's emergency room visit on February 4, 2002 for hip pain.  (R. at 124-34.)  Plaintiff complained of hip and leg pain progressing over four days, but diagnostic radiology reports demonstrate that her hip and femur were normal, there was no indication of kidney stones, but she did have gall stones and a right adenayl cyst.  (R. at 134.) Plaintiff was given pain medication, discharged, and directed to follow up for further evaluation.  (Id.)

The next exhibit concerns Plaintiff's visit to the emergency room three days later, complaining of back pain.  (R. at 135-41.)

10

Plaintiff was given more pain medication, but she left before the attending emergency room physician evaluated her.  (R. at 141.)

Another exhibit that Plaintiff claims that the ALJ did not consider because he did not specifically reference it in his report is a June 9, 2002 visit to the emergency room after she was involved in a motor vehicle accident where she was rear-ended.  (R. at 146-52.)  Plaintiff complained of back and neck pain, she was given pain medication, and then discharged.  (R. at 152.)

Finally, Plaintiff contends that the ALJ did not consider her emergency room visit on February 12, 2003 for back pain and dizziness that Plaintiff reported was due to a car accident on February 5, 2003.  (R. at 185-92.)  Plaintiff was discharged after receiving some pain medication.  (R. at 187.)

Although these four exhibits are not specifically referenced in the ALJ's decision, it does not mean that he did not consider this evidence.  Even assuming, however, that the ALJ did not consider these exhibits, none of them contradict the ALJ's finding that Plaintiff was capable of performing light work.  All that these exhibits show is that on four occasions, Plaintiff went to the emergency room complaining about back pain, she received pain medication, and was discharged.  The exhibits do not support Plaintiff's contention that she is totally disabled with regard to her alleged physical disabilities.

11

Concerning the ALJ's determination that Plaintiff had the mental capacity to perform light work, Plaintiff claims that the ALJ did not properly evaluate her mental abilities.  The ALJ noted that Plaintiff testified that she had been depressed since 2001, "but there is no evidence that she sought any treatment. She has not been under any regular treatment by a psychologist or psychiatrist, at any time since her alleged onset date of disability.  There is no evidence to establish any thought disorder, any significant deficits in her memory or concentration.  There is no evidence of any marked limitations in her activities of daily living, attributed to mental impairment." (R. at 27.)

The ALJ also referred to a consultative psychological evaluation performed on June 8, 2003.  The ALJ noted that the psychologist, Dr. Hesse, found no evidence of disordered thinking, and diagnosed Plaintiff with "Major Depression, with a Global Assessment of Functioning (GAF) of 40 to 45."  (R. at 26.) The ALJ explained that "a score in the 41-50 range indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning."  (Id.)  The ALJ also noted that the psychologist suggested that Plaintiff needed psychiatric treatment for stabilization, but the record was devoid of any

evidence that she sought additional treatment.[1] (Id.)

Plaintiff argues that the ALJ failed to consider the consulting psychologist's statement that Plaintiff's depression was "severe," that "[a]t present, is acutely mentally ill," and that a GAF score of 41-50 means serious impairment, rather than moderate impairment. (Pl.'s Br. at 18-19.) Missing from Plaintiff's argument, however, is recognition of the ALJ's contemporaneous discussion of Plaintiff's history of drug abuse. The ALJ noted that even though Plaintiff claimed at the hearing she had stopped using drugs three years ago "cold turkey," her hospital records from February 2003 showed that she had been using intravenous cocaine, and in June 2003, she stated that she had only been free of drug use for three months. (R. at 27.) The ALJ noted that there was no evidence in the record that Plaintiff received any drug abuse treatment or mental health treatment to show abstinence or that "she had significant mental problems independent of the effects of drug abuse." (Id.) The ALJ also stated,

> Dr. Hesse's report indicates that the claimant's depression is quite significant, but it must be considered that she never sought mental health treatment, and that she has a recent history of substance abuse. Dr. Hesse also recommended a drug abuse program, which indicates that the claimant was not considered to be in an established or sustained

---

[1]This finding is countered by Plaintiff's proffer of additional evidence. Whether that additional evidence affects the ALJ's decision is discussed below in Part 2.

remission.  Further, this assessment was based on one
examination, and there is no longitudinal evidence, or
report from a treating psychologist or psychiatrist to
establish that her normal functioning is limited to the
degree indicated from the GAF score.

(Id.)

The ALJ's analysis of Dr. Hesse's report acknowledged the
severity of Plaintiff's depression as it was classified by Dr.
Hesse, but in consideration of the entire record, the ALJ did not
find Dr. Hesse's report to be singly dispositive as to
Plaintiff's ability to work.  Considering, as the ALJ did, the
Social Security Administration's regulation that "individuals for
whom drug addiction . . . is a contributing factor material to
the determination that they are disabled" are not eligible for
benefits, his conclusion that Plaintiff's depression did not
preclude her from light work is reasonable and supported by
substantial evidence.  See Brown v. Bowen, 845 F.2d 1211, 1213
(3d Cir. 1988).

### B.  *Whether the ALJ properly relied on the Medical Vocational Guidelines*

Plaintiff argues that at Step Five of the sequential
analysis the ALJ improperly relied on the Medical Vocational
Guidelines, or "the Grids,"[2] to determine that she was capable of

---

[2]The Grids "establish the types and number of jobs that
exist in the national economy for claimants with exertional
impairments."   Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000)
(citing 20 C.F.R. pt. 404, subpt. P, app. 2 (1999)).

"The grids consist of a matrix of four factors-physical
ability, age, education, and work experience-and set

light work.

Plaintiff's argument is untenable.  The Third Circuit has directed that the "Commissioner cannot determine that nonexertional impairments do not significantly erode occupational base under medical-vocational guidelines ("grids") without taking additional vocational evidence establishing that fact."  <u>Sykes v. Apfel</u>, 228 F.3d 259, 261 (3d Cir. 2000).  The Commissioner, however, is "not required to consult a vocational expert or other vocational resource in all instances in which we decide whether an individual who has a nonexertional limitation(s) is or is not disabled. For instance, we are not always required to consult a vocational expert or other vocational resource to help us determine whether a nonexertional limitation significantly erodes a claimant's occupational base when adjudicative guidance on the

––––––––––––––––––

forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion that work exists that the claimant can perform. . . . Each of these four factors is divided into defined categories. A person's ability to perform physical tasks, for example, is categorized according to the physical exertion requirements necessary to perform varying classes of jobs-i.e., whether a claimant can perform sedentary, light, medium, heavy, or very heavy work. Each of these work categories is defined in terms of the physical demands it places on a worker, such as the weight of objects he must lift, and whether extensive movement, or use of arm and leg controls, is required."

<u>Id.</u> (citations omitted).

effect of the limitation is provided in an SSR.[3]"  AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.)).

Here, the ALJ found that Plaintiff's nonexertional impairments--her depression--did erode her occupational base by determining that her mental limitations restricted her to light work.  The ALJ also referred to SSR 83-10, which states that the Grids take into consideration the presence of nonexertional abilities sufficient to do unskilled work at any level of exertion.  (R. at 29.)  Thus, the ALJ properly relied upon the Grids to determine that Plaintiff was not disabled based on her age, education, and residual functional capacity for unskilled light work.

    C.   ***Whether the ALJ did not properly consider
         Plaintiff's own testimony of her pain and
         limitations in accordance with SSR 96-7p***

Plaintiff also argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain in accordance with SSR 96-7p.  Allegations of pain and other subjective

---

[3] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." Sullivan v. Zebley, 493 U.S. 521, 531 n.9 (1990) (internal quotations omitted). "Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. A ruling may be superseded, modified, or revoked by later legislation, regulations, court decisions or rulings." Heckler v. Edwards, 465 U.S. 870, 874 n.3 (1984) (internal quotations omitted).

symptoms must be supported by objective medical evidence, 20
C.F.R. § 404.1529(c), and an ALJ may reject a claimant's
subjective testimony if he does not find it credible as long as
he explains why he is rejecting the testimony.  Schaudeck v.
Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); SSR
96-7p.  The explanation of SSR 96-7p provides,

> No symptom or combination of symptoms can be the basis
> for a finding of disability, no matter how genuine the
> individual's complaints may appear to be, unless there
> are medical signs and laboratory findings demonstrating
> the existence of a medically determinable physical or
> mental impairment(s) that could reasonably be expected
> to produce the symptoms.
>
> . . .
>
> In determining the credibility of the individual's
> statements, the adjudicator must consider the entire
> case record, including the objective medical evidence,
> the individual's own statements about symptoms,
> statements and other information provided by treating
> or examining physicians or psychologists and other
> persons about the symptoms and how they affect the
> individual, and any other relevant evidence in the case
> record.

SSR 96-7.

Here, Plaintiff contends that the record "contains multiple
objective study reports demonstrating medically determinable
impairments that could reasonably be expected to produce the pain
and symptoms to which Plaintiff testified."  (Pl.'s Br. at 27.)
In his decision, the ALJ noted numerous reports, most of which
Plaintiff refers to, but found, however, that Plaintiff's
allegations regarding her limitations were "not totally credible

17

for the reasons set forth in the body of the decision." (R. at 30.) The ALJ's "reasons" for why he did not find Plaintiff's testimony credible are what has already been discussed above regarding Plaintiff's contentions that the ALJ improperly evaluated her residual functional capacity and improperly applied the Grids. Specifically, the ALJ found that no treating physician stated that Plaintiff was totally and permanently disabled, and no treating physician indicated that any limitations would prevent her from working. The ALJ also found that her lack of treatment for her mental impairments, coupled with her history of drug abuse, did not support Plaintiff's contention that she was totally disabled. Additionally, Plaintiff's emergency room treatment records simply relate that Plaintiff claimed to the emergency room doctors that she was experiencing back pain, but they do not demonstrate any objective evidence to support her claims. Consequently, there is substantial evidence in the record to support the ALJ's determination that Plaintiff's complaints of her limitations were not "totally credible."

**2.   Whether the Court should remand the case due to the existence of new and material evidence**

Plaintiff claims that new and material evidence obtained subsequent to her hearing before the ALJ requires the remand of her case. A court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only

upon a showing that there is new evidence which is material and
that there is good cause for the failure to incorporate such
evidence into the record in a prior proceeding." 42 U.S.C. §
405(g). The Third Circuit has explained,

> [Section] 405(g) now requires that to support a "new
> evidence" remand, the evidence must first be "new" and
> not merely cumulative of what is already in the record.
> Second, the evidence must be "material;" it must be
> relevant and probative. Beyond that, the materiality
> standard requires that there be a reasonable
> possibility that the new evidence would have changed
> the outcome of the Secretary's determination. An
> implicit materiality requirement is that the new
> evidence relate to the time period for which benefits
> were denied, and that it not concern evidence of a
> later-acquired disability or of the subsequent
> deterioration of the previously non-disabling
> condition. Finally the claimant must demonstrate good
> cause for not having incorporated the new evidence into
> the administrative record.

Szubak v. Secretary of Health and Human Services, 745 F.2d 831,
833 (3d Cir. 1984) (internal citations omitted).

Here, Plaintiff presents as new and material evidence "19
pages of medical records from Underwood Memorial Hospital -
Behavioral Health Services Discharge Summary dated September 24,
2004 through October 18, 2004." (Pl.'s Br. at 9.) Plaintiff
explains that these records were "apparently unavailable" to
Plaintiff's prior counsel at the time of the hearing before the
ALJ on November 22, 2004, but that the records were mailed to the
ALJ on December 9, 2004. (Id.) The ALJ issued his decision on
December 13, 2004, but these records were not referenced in the

19

ALJ's decision, and it appears that they were never associated with Plaintiff's file.  (Id.)

      As a primary matter, Plaintiff has not demonstrated good cause for why these records were not presented to the ALJ. Claimants have a duty "to present to the ALJ all relevant evidence concerning the claimant's impairments," because if district courts were "to order remand for each item of new and material evidence," the door would be open "for claimants to withhold evidence from the ALJ in order to preserve a reason for remand."  See Matthews v. Apfel, 239 F.3d 589, 595 (3d Cir. 2001).  Here, Plaintiff's only explanation is that the records were "apparently unavailable" to her prior counsel.  This is not sufficient to justify remand.

      Even if good cause did exist, however, Plaintiff's "new" evidence is not material.  The Underwood Hospital records evidence that Plaintiff was referred to a mental health treatment program by her primary care physician for depressive and anxiety symptoms with suicidality.  (R. at 35.)  At her initial assessment on September 24, 2004, Plaintiff's Global Assessment of Functioning (GAF) was 35, which indicated "some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood."  (R. at 35.)  Plaintiff was prescribed medication and received counseling, and her GAF score improved to

20

40.  (R. at 34.)  Despite her continued improvement (R. at 33),
Plaintiff was discharged on October 18, 2004 because of her poor
attendance due to the flu (R. at 34).  Plaintiff was instructed
to contact the treatment center when she was able to return, but
there is no evidence that Plaintiff resumed treatment.  (Id.)

     In making his decision to deny Plaintiff benefits, the ALJ
considered that Plaintiff had not been under any regular
treatment by a psychologist or psychiatrist at any time since her
alleged onset date of disability.  This new evidence of
Plaintiff's treatment at Underwood Hospital does not require
remand, however, because this evidence would not have changed the
outcome of the ALJ's determination that Plaintiff was capable of
light work.  First, the treatment records do not place any
limitations on her ability to work.  Second, when Plaintiff was
discharged from the treatment program, she had essentially the
same GAF score as when she received her consultative
psychological evaluation on June 8, 2003, which was evidence that
the ALJ had considered.  Finally, Plaintiff's failure to comply
with treatment that was recommended by her primary care physician
weighs in favor of denial of benefits.  20 C.F.R. § 416.930
(stating that "in order to get benefits, you must follow
treatment prescribed by your physician if this treatment can
restore your ability to work," and if "you do not follow the
prescribed treatment without a good reason, we will not find you

disabled").

Consequently, because Plaintiff's "new" evidence is not material, and there is no good cause for why it was not submitted to the ALJ for consideration, Plaintiff's request for remand must be denied.

**III. CONCLUSION**

For the reasons expressed above, the decision of the ALJ is affirmed.  An accompanying Order will be issued.


Date: May 22, 2007                    s/ Noel L. Hillman

At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.

22